McCAIN, Judge.
Appellant-defendant appeals an adverse declaratory judgment determining the deceased, Thomas M. Dieterle had timely applied for conversion of a group insurance policy to individual life. We reverse.
Prior to death the deceased was an active full-time officer and employee of First Research Corporation and was insured under a group policy issued by appellant. There is no dispute as to deceased’s discharge or subsequent demise. The only factual issue submitted for determination to the lower court was whether deceased had timely exercised his right to convert the group insurance to individual life insurance within a thirty-one (31) day limitation period, the application for which was submitted on July 28, 1966.
The lower court essentially found: (1) the board of directors of First Research Corporation on June 20, 1966, decided to terminate the deceased’s employment; (2) the minutes of the meeting indicate all matters pertaining to the deceased and his effective date of termination of employment were to be deferred until a later date; (3) the deceased left employment of the corporation July 1 when he signed the written agreement which included his resignation effective June 20.
Upon these findings the court concluded the deceased was a full-time active employee of the corporation until July 1, 1966 and that the agreement of July 1 was a retroactive termination date did not affect deceased since he was in fact a full-time employee until July 1.
*406 Realizing that a lower court’s findings and conclusions should be upheld if at all possible, we cannot come to any conclusion under the evidence except that the deceased was no longer a full-time employee of the corporation after June 20, 1966.
The group insurance policy states:
“Al A person must be a member of the general group described in Section Al(a) and must belong to an eligible class of the general group as specified in Section Al(b).
(a) The employees of First Research Corporation.
(b) Each active full-time Officer and employee whose monthly compensation (as defined in Section Bl) is $750 or more.
For the purposes of this policy, any person who works less than 32 hours per week shall not be considered a full-time employee.”
The policy further provides for the termination of insurance in the following language:
“Cl If for any reason the status of a person insured under this policy changes so that he is no longer a member of the general group defined in Section Al(a), his insurance will immediately terminate. * * * ”
and for conversion to individual life insurance, as follows:
“F3 Any person insured whose insurance, or any portion thereof, is terminated for any reason except discontinuance or amendment of this policy may, provided all requirements are met, obtain a life insurance policy, without disability or other supplemental benefits, insuring his life under any plan then customarily issued by the Company, except term insurance. The person insured will not be required to furnish evidence of insurability, but within 31 days following the date his insurance was terminated he must (1) apply for the policy in form acceptable to the Company. * * * ”
In construing these sections of the policy it appears that when the status of an employee changes so he is no longer a member of the general group defined in Section Al(a), namely an employee, his insurance would terminate and he would have 31 days in which to convert it to an individual policy.
At a special meeting of the board of directors of the corporation held on June 20, 1966, the minutes show among other things that all directors were present, and a chairman of the board and president and chief executive officer were elected. More important to this cause a resolution was passed by a six to four vote, with one abstention, “that the Board of Directors discharge Mr. Thomas M. Dieterle as Executive Vice President of the Domestic Division of First Research Corporation, effective immediately, and that a Committee be appointed to negotiate with Mr. Dieterle as to terms of discharge, effective date and termination agreement and any other pertinent matters.” The minutes reflect the meeting then recessed to permit the designated committee to negotiate a possible termination agreement with the deceased.
Upon reconvening of the board, the report of the committee reflected it had worked out a tentative agreement with the deceased, subject to the board’s approval. It was then moved, seconded and passed that the agreement be approved with a copy thereof to be attached to and made a part of the minutes.
A former employee of the corporation and later an employee of the deceased testified that after the board meeting he spoke with the deceased who called him from the airport that night stating he was en route to Washington to testify for *407 a client of the corporation. The employee further testified the deceased stated:
“* * * That Mr. Moore had more or less succeeded in winning the particular point that he was making and that they had worked out some type of arrangement whereby he would continue to carry out the duties that were his as a result of previous commitments. * * *»
The employee was not aware of the specifics of the commitments and while he did not recall the exact terminology the deceased used, he stated, “I got the implication that in some fashion he would no longer be directly associated with the company other than the fact there were these three or four remaining obligations he would fulfill.”
The deceased asked the attorney on the board to write a letter to him concerning the termination agreement as approved at the June 20 meeting. The letter was forwarded on June 22 and contained these points:
“2. The studies and testimony are to be handled in accordance with the draft as tendered by your attorney, with the exception that the Provident study will be on a $175.00 per day basis with an estimated ten days to be done, plus expenses. The Island Federal matter you are to testify in the first study at no cost to First Research and you are to do the second study and pay First Research a 10% gross override.
« * *
“5. You are to resign as an employee, officer and director of First Research effective immediately.
« * # * •
“7. The matter is to be terminated on an amicable basis and it is to be so represented insofar as the public is concerned.”
The closing paragraph stated:
“As soon as you get back to town, if you will come in, I will prepare a formal agreement, resignations, releases, etc.”
These provisions are essentially the same as those contained in the July 1 agreement reduced to writing and signed after the deceased returned to town and went to the attorney’s office. The attorney’s understanding as a member of the board was that as of June 20, 1966, the deceased was discharged.
From- the record it conclusively appears the deceased was discharged on June 20, but agreed to tie up his loose ends, including giving testimony for clients of the company that he had already worked on. Rather than employment this was closing the operational ends he agreed to do on June 20, 1966, and which was later reduced to writing and signed on July 1, 1966.
In National Security Ins. Co. v. Stewart, 1965, 43 Ala.App. 274, 188 So.2d 774, an employee resigned on January 2, 1963, to be effective at the close of business on January 25. Application for conversion was not made within 31 days after January 25 and the court held as a matter of law that there was no conversion, but the court pointed out it could be argued the employment ceased on the date of last active work, i. e. January 2. See also the annotation appearing at 68 A.L.R.2d 41, 50.
We conclude the deceased’s employment with the corporation terminated on June 20, 1966, and that his application for conversion from group to individual insurance was made later than 31 days thereafter and thus untimely resulting in no obligation or liability in his favor from appellant.
Accordingly the judgment of the trial court appealed from is reversed and this cause be and is hereby remanded for entry of judgment in favor of appellant in keeping with the views expressed herein.
Reversed and remanded.
WALDEN and OWEN, JJ., concur.